# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## DOCKET NO. 1:12-CV-00295-MR-FDW

| | |
|---|---|
| **DENISE W. DARBY,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**CAROLYN W. COLVIN,**[1] )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>) | **ORDER** |

**THIS MATTER** is before the Court upon Plaintiff Denise W. Darby's ("Plaintiff's") Motion for Summary Judgment, (Doc. No. 11) filed on February 11, 2013, and Defendant Commissioner of Social Security Michael J. Astrue's Motion for Summary Judgment, (Doc. No. 15) filed on May 13, 2013. Plaintiff seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED and, accordingly, the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

## I. BACKGROUND

Plaintiff suffered a workplace injury in March of 2006 resulting in a tear to her left rotator cuff. (Doc. No. 9-13). Dr. Mark Cardell performed surgery to repair Plaintiff's left

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

rotator cuff in May of 2006. (Doc. No. 12). Following the surgery, Plaintiff returned to work but complained of pain in her left shoulder and neck to her primary care physician, Dr. Robert Dorn, in September of 2006. An MRI of Plaintiff's left shoulder in November of 2006 revealed a possible tear of the posterior edge of her supraspinatus tendon and apparent tear in her supraspinatus muscle. (Doc. No. 9-13). Dr. Glenn Perry, Plaintiff's treating orthopedist from 2006 through 2009, performed a second surgery to repair Plaintiff's left rotator cuff on February 21, 2007. Following this surgery, Dr. Perry cleared Plaintiff to return to work without restrictions. Plaintiff complained to Dr. Dorn of pain in her right shoulder in June of 2007 and to Dr. Perry on July 25, 2007. Additionally, an MRI of Plaintiff's cervical spine in July of 2007 revealed a mild disc bulge with spondylosis. During an examination of Plaintiff's right shoulder in October of 2007, Dr. Perry noted tenderness in her right bicep and recommended arthroscopic decompression surgery, which he performed on December 31, 2007.

Simultaneously, Plaintiff began treatment at a pain management clinic for myofascial pain in both of her shoulders for which she was given a series of trigger point injections and cervical branch blocks leading to significant improvements. An MRI in December of 2007 revealed a full thickness rotator cuff tear. Dr. Perry performed a repeat rotator cuff repair on Plaintiff's left shoulder on May 6, 2008. On July 28, 2008, Plaintiff reported to Dr. Perry that the pain in her left shoulder had improved, but she reported pain during supraspinatus testing. Following an MRI, Dr. Perry diagnosed Plaintiff with a recurrent rotator cuff tear in her left shoulder for which he recommended additional surgery. Dr. Perry performed the surgery on November 10, 2008.

At a follow up appointment with Dr. Perry on February 25, 2009, Plaintiff showed good

range of motion and strength in her left shoulder but reported some pain in her cervical spine. An MRI of Plaintiff's cervical spine was negative for any abnormalities. Dr. Perry ordered an electromyogram and nerve conductivity study ("EMG/NCS") due to Plaintiff's continued complaints of neck pain, and reported on June 8, 2009. Dr. Perry reported that the EMG/NCS revealed no abnormalities. Additionally, following a functional capacity assessment, Dr. Perry reported that Plaintiff was capable of working with medium levels of exertion on May 21, 2009. Dr. Perry then later recorded in his notes of an appointment with Plaintiff on June 24, 2009 that she should not lift over ten pounds or perform any overhead reaching. On August 17, 2009, Dr. Dorn briefly noted on a prescription pad that Plaintiff "was not to work because of shoulder pain." (Doc. No. 9-13).

## II. PROCEDURAL HISTORY

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on December 19, 2007, alleging a disability onset date of July 19, 2007. (Doc. No. 9-13). The claim was initially denied on February 20, 2008, and again upon reconsideration on July 22, 2008. Subsequently, on August 8, 2008, Plaintiff filed a written request for an administrative hearing and Administrative Law Judge H. Allen Wagner held a hearing on April 8, 2010. On July 30, 2010, the ALJ issued a decision finding that Plaintiff was not disabled, and the Appeals Council denied Plaintiff's request for review on July 23, 2012. (Doc. No. 12). Thus, the ALJ's decision of July 2010 became the final decision of the Commissioner.

Plaintiff timely filed this action on September 21, 2012, and the parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, this Court "'must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). This Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the

record to support the Commissioner's final decision. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled," as defined for Social Security purposes, between July 19, 2007, and the date of his decision.[2] To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

On July 30, 2010, the ALJ found that Plaintiff was not "disabled" at any time between July 19, 2007, and the date of his decision. (Doc. No. 9-13). The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. C.F.R. § 404.1520(a). The five steps are:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

(20 C.F.R. §§ 404.1520(a)(4)(i-v)). In this case, the ALJ determined that Plaintiff was not disabled under the fifth step of the above evaluation process. (Doc. No. 9-13). Particularly, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Doc. No. 9-13).

On appeal, Plaintiff makes the following assignments of error: (1) that the ALJ failed to develop the record by failing to accord proper weight to the opinion of Plaintiff's treating primary care physician, Dr. Dorn; and (2) that the ALJ failed to resolve conflicts between the vocational expert's ("VE's") testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. No. 13).

Plaintiff first argues that there is not substantial evidence to support the ALJ's decision to afford little to no weight to Dr. Dorn's opinion. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2) (2002); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

Here, the ALJ rejected Dr. Dorn's opinion that Plaintiff was unable to work primarily due to constant pain. A summary statement from a physician that a claimant is "disabled" is not a medical opinion, but rather, it is an opinion on an issue reserved to the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d). Further, such opinions are not entitled to special significance. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Therefore, the opinion by Dr. Dorn that Plaintiff was "disabled" was rejected by the ALJ under the proper standard because whether Plaintiff is disabled is an issue reserved to the ALJ.

Moreover, upon review of the record, the Court finds that the ALJ's decision to afford little to no weight to the opinion of Dr. Dorn is supported by substantial evidence that his opinion is inconsistent with the other substantial evidence contained in the record. This includes the opinions of (1) Dr. Perry, Plaintiff's treating orthopedist, (2) Dr. Joseph Estwanik, an evaluating orthopedist, and (3) three state agency medical consultants, all of whom determined that Plaintiff was capable of light work. Additionally, neither Dr. Perry nor Dr. Estwanik reported any objective findings to support Plaintiff's complaints of pain. Thus, because of inconsistencies with the other medical opinions and a lack of objective findings to support Dr. Dorn's opinion, the ALJ did not err in affording little to no weight to his opinion.

Plaintiff additionally argues that the ALJ's statements during the following exchange between the ALJ and Plaintiff's counsel ("GCP") during the hearing were improper and reversible error:

> ALJ: What about this Dr. Estwanik?
>
> GCP: Your Honor, as we have discussed earlier that's something that I would be agreeable to, given your statements that you don't accept a family doctor as being qualified to give residual functional capacity evaluations.

> ALJ: Because 9 out of 10 times they are so off the wall that they don't seem to be objective and I see that so much.
>
> GCP: And Your Honor as I indicated to you yesterday I don't agree with that opinion but that is your opinion and therefore if, if…
>
> ALJ: Well I mean if you have the specialist that she's had we look to the specialist before we ever look to the family doctor.
>
> GCP: Who were hired by the worker's compensation carrier except for the pain specialist who won't answer the questions.
>
> ALJ: Well I am giving you an opportunity for an independent evaluation.
>
> GCP: And I've already indicated that I agree to that Your Honor and I will be happy to set it up.

(Doc. No. 12).

Contrary to Plaintiff's assertion, the ALJ's statements are not that he is rejecting Dr. Dorn's opinion solely because he is a primary care physician, but rather that he is rejecting them in this case because (1) Plaintiff's complaints are orthopedic in nature and that in this case he places far greater weight on the opinion of her treating orthopedist and (2) his reasoning for doing so based in part on his experience that orthopedic matters are outside of the expertise of primary care physicians and that their opinions are based on subjective evidence. This is demonstrated by the ALJ's preceding statements "that orthopedic problems or neurological problems are out of their [primary care doctor's] area of expertise" and "he [Dr. Dorn] doesn't really indicate why, he's limited her as much as he has." (Doc. No. 16). Additionally, Plaintiff cites no case law to support her argument that these statements were improper and reversible error. Thus, the Court finds that the ALJ did not err in making these statements, and that the ALJ did not err in attributing little to no weight to Dr. Dorn's opinion.

Plaintiff also argues that the ALJ failed to reconcile conflicts between the VE's testimony and the DOT. At the hearing on July 30, 2010, the VE testified that someone with Plaintiff's vocational profile and the limitations included in the RFC could perform the following jobs: information clerk (DOT 237.367-018) with 1,626 jobs in North Carolina, photo counter clerk (DOT 249.36-010) with 1,475 jobs in North Carolina, and furniture rental clerk (DOT 295.357-018) with 1,531 jobs in North Carolina. Plaintiff argues that the ALJ's decision is flawed because it did not resolve conflicts between the VE's testimony that someone limited to performing only "unskilled routine repetitive type jobs," (Doc. No. 9-13) could perform jobs requiring the DOT's General Educational Development reasoning level of three or four and the actual parameters of the DOT.[3] (Doc. No. 12). Even assuming without deciding that Plaintiff can establish that the ALJ's decision is flawed because it did not resolve these conflicts, the alleged error, however, is not a reason for remand because it is merely a harmless error and Plaintiff has not articulated how she was harmed or prejudiced by the error. See Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Remand is only appropriate if the ALJ would realistically reach a different conclusion or decision upon remand. Dover v. Astrue,

---

[3] Level 6: Apply principles of logical or scientific thinking to a wide range of intellectual and practical problems. Deal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases. Deal with a variety of abstract and concrete variables. Apprehend the most abstruse classes of concepts. Level 5: Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical reasoning. Level 4: Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations. Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. Level 1: Apply commonsense understanding to carry out simple one or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job. DOT at 1010-1011.

No. 1:11-cv-120, 2012 WL 1416410, at *5 (W.D.N.C. Mar. 19, 2012) (finding that "even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result.").

As correctly identified by Plaintiff, the job of information clerk requires a reasoning level of four, the job of furniture retail clerk requires a reasoning level of three, and the job of photo counter clerk requires a reasoning level of two. Thus, pursuant to the VE's testimony discussed previously, even removing the positions of information clerk and furniture rental clerk from the equation, Plaintiff could perform the job of photo counter clerk − constituting 1,475 jobs in North Carolina. Plaintiff thus still could perform a significant number of jobs in the region, despite any possible error by the ALJ of initially including the positions of information clerk and furniture retail clerk in his determination. See Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979) (holding that three occupations with 100 positions in the region constitutes a significant number). Therefore, because there are a significant number of jobs in North Carolina that Plaintiff can still perform, the decision of the ALJ would remain the same upon remand, rendering Plaintiff neither harmed nor prejudiced.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, (Doc. No. 11) is DENIED, Defendant's Motion for Summary Judgment, (Doc. No. 15) is GRANTED, and the ALJ's decision is AFFIRMED. The Clerk's Office is directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: August 22, 2013

Frank D. Whitney
Chief United States District Judge